**C. T. SELLERS et al., Appellants,**

**v.**

**Aubrey L. WEBB, Appellee.**

**No. 6827.**

Court of Civil Appeals of Texas.

Beaumont.

April 14, 1966.

Robert F. Atkins, Coldspring, for appellants.

Robert B. Smither, Huntsville, Coker & Coker, Conroe, for appellee.

PARKER, Justice.

C. T. Sellers and James H. Sewell sued to rescind a sales contract of land, alleging fraud on the part of the seller, Aubrey L. Webb. In answer to special issues the jury found: (1) that Aubrey L. Webb represented to C. T. Sellers that Webb's corner was at a location "X" as shown on plaintiffs' Exhibit No. 1; (2) that C. T. Sellers and James H. Sewell believed and relied upon such representation made by Webb; (3) that such representation was false; (4) that Webb knew at the time he made such representation that it was false; (5) that such false representation was a material inducement to Sellers and Webb for entering into such contract. Motion for judgment on the jury findings was filed by the plaintiffs. Motion to disregard the jury findings was filed by the defendant Webb. The court, being of the opinion that there was no evidence to raise said issues as to plaintiff Sewell, granted the motion to disregard the jury findings on special issues as to Sewell, with judgment rendered that Sellers recover $2,500.00 from Aubrey L. Webb and that James H. Sewell take nothing by his suit. Aubrey L. Webb has appealed and also James H. Sewell has appealed from the judgment of the trial court. The parties will be called by their names.

Webb's points of error are that (1) the trial court erred in granting a judgment on the jury's verdict for C. T. Sellers because there was no evidence to support the findings of the jury and (2) that the trial court erred in granting a judgment on the jury's verdict for C. T. Sellers because the evidence is insufficient to support the findings of the jury.

Sewell's points of errors are that (1) the trial court erred in holding that Webb was not guilty of fraud against James H. Sewell under the facts of this case, and (2) that since fraud was proved, the trial court erred in not setting aside the entire contract entered into between Aubrey L. Webb, James H. Sewell and C. T. Sellers, "instead of holding it valid as to Sewell and Webb, but void as to Sellers and Webb."

The contract of July 18, 1962, was a sales contract by which the seller Aubrey Lee Webb agreed to sell and the purchasers, James H. Sewell and C. T. Sellers, agreed to buy all of a tract of land containing 182.655 acres for the total sum of $54,796.-50. The purchasers were bound to purchase this land. It was not an option. This contract of sale is entire and indivisible. Only one tract of land was contracted to be sold by one owner to two purchasers who were jointly liable to purchase the entire tract for the price agreed upon.

The consideration of $54,796.50 was payable as follows:

(a) $5,000.00 cash upon the execution of this agreement to the seller by purchasers as an earnest money deposit.

(b) $10,890.98 cash to be paid at the time the transaction is completed and deed is delivered to the purchasers.

(c) $38,905.52 payable under a purchase-money note bearing interest at the rate of 6% per annum from the date of closing until paid, said note payable as follows: $13,305.52 one year from the date of closing, $12,800.00 two years from date of closing, and $12,800.00 three years

from date of closing, the interest on the unpaid principal to be due and payable on said installment dates in addition to the installments of principal, providing for acceleration of maturity on default in the payment of any installment of principal or interest, 10% interest on past due principal and interest, and 10% attorney's fees for collection.

The deferred payment shall be secured by the usual vendor's lien and a first deed of trust containing power of sale upon a form approved by the Seller.

The alleged fraud by the seller was discovered in August of 1962. Thereafter, several discussions were had between Sewell and Webb, Sewell complaining of alleged misrepresentation with reference to boundaries. Finally, Sewell wrote Webb on October 15, 1962, the contract would be cancelled.

The contract of sale had the following provision:

"VII.

"As a part of the consideration for this sale the Purchasers agree to enter into a pasture or grazing lease whereby they will lease said premises to Seller for that purpose, or so much thereof as is not developed or improved along the proposed lake shore of Lake Livingston and not submerged by reason of a proposed dam of the Trinity River, for a period of six (6) years from the closing of this transaction, at a rental of One ($1.00) Dollar per acre for the acreage actually available for grazing. Should Purchasers commence development with improvements along the proposed lake shore, Seller will fence off the portion being developed at his expense and retain the use of the unsubmerged portion at the rental above provided. Seller may terminate such lease at his option should any portion of said premises be covered by water as a result of the proposed dam of the Trinity River for Lake Livingston."

Sewell testified the sole reason he and Sellers were interested in the purchase was to obtain water front on the proposed Lake Livingston and that "we had several people who were coming in; we were going to develop the land and that was going to take a lot of money." From the provision of the contract reciting that the purchasers intended to develop the property and Sewell's statements, the purchasers were acquiring the property as part of a joint venture. Clearly, Webb was selling the entire tract of land, not an undivided interest in the tract of land. Under the contract Webb did not agree to convey an undivided one-half of the 182 acres to Sewell should Sellers not buy the other undivided one-half interest. From the above facts, this court concludes that the entire contract must stand or be declared null and void with the parties placed in status quo, depending on whether or not fraud was established. This conclusion is based on the following authorities: "[This case] involves fraud, which, if found to exist, vitiates, as between the parties, the entire transaction." McDonald v. Simons, 280 S.W. 571 (Tex.Com. App., Sec. B, 1926), judgment and holding of the Commission of Appeals on the questions discussed in its opinion approved by the Supreme Court; Conley v. Texas Co., 289 S.W. 169, 172 (Tex.Civ.App.1926, n.w. h.), citing as authority Nass v. Chadwick, 70 Tex. 157, 7 S.W. 828 (1888). In the latter case it was held:

"The contract is an entirety, and as such must either be affirmed or rescinded. In this respect it differs from no other contract."

Also see 148 A.L.R. 417 under the annotation "Partial Recision of Contract" and Texas cases cited on page 422.

In this particular transaction it would seem it was a joint venture. Sewell testified the only reason he and Sellers were interested in the purchase was to obtain water front on the proposed Lake Livingston; that according to the line and corners Webb showed Sellers, the Webb tract of

land would have some 80 acres above the water line of Lake Livingston instead of 23 acres according to the correct lines. They were not complaining about the acreage that Webb owned. As Sewell testified—"If he had 80 acres out of the water, we would still buy it. The 80 acres he told us there would be." Sewell testified that he would not have paid Webb any money or signed the contract had he known that the land showed to Sellers by Webb as his belonged to someone else. Sellers testified to the same effect. Mr. Sewell further testified:

"We had several people who were coming in; we were going to develop the land and that was going to take a lot of money."

"Q. Did they back out?

"A. No. We cancelled it when we did not have what we thought we had. It would have gone through."

Sellers said he went on the land with Webb when Webb showed him corners which Webb represented as being his corners. Thereafter, Sellers took Sewell upon the land, showed him the lines and corners that Webb had shown him. From these lines and corners some 80 acres of the 182 acres would have been above high water of Lake Livingston when completed, but according to the correct corners of Mr. Webb's land 23 acres and not 80 acres would have been higher than the shore line of Lake Livingston when completed. The remainder of the 182 acres would have been under water of Lake Livingston. The surveyor Kirkland corroborated this evidence as to high land acreage, after Sellers showed him the lines and corners Webb had pointed out to Sellers. The sales contract was closed without discovery of this misrepresentation.

■ The evidence shows without dispute the purchasers were interested in purchasing for the sole reason that about 80 acres of the 182 acres would be higher than the shore line of Lake Livingston according to Webb's representation of his lines. The difference between 80 acres and 23 acres above high water of Lake Livingston was a material misrepresentation.

The 182 acres was being acquired by Webb under a contract dated June 9, 1955, with the Veterans' Land Board. Prior thereto the land was surveyed with permanent markers placed at each corner with bearing trees and the lines marked. Webb knew the location of his lines and corners. For six or seven years before Webb took Sellers upon the land, Webb had been upon his land several times a month, running cattle and cutting pulp wood. Webb was in the timber and pulp wood business to some extent. The bearing trees at the key corner were still standing and marked at the time Webb showed Sellers a corner some 300 feet from it, according to Sellers' testimony.

■ In considering appellee Webb's point of error No. 1 that the answers of the jury were not supported by any evidence, that part of the record most favorable to the findings of the jury are controlling and Webb's contention is overruled. In considering Webb's point of error No. 2 that the evidence is insufficient to support the findings of the jury, the entire record and all evidence has been carefully reviewed. The findings of the jury are not so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and, accordingly, this point of error is overruled.

James H. Sewell's points of error are each sustained.

The judgment of the trial court is affirmed in part and reversed and rendered in part with judgment here entered that James H. Sewell recover of and from Aubrey L. Webb the sum of $2,500.00; that C. T. Sellers do have and recover of and from Aubrey L. Webb the sum of $2,500.00; that said sales contract entered into between Aubrey L. Webb as seller, and C. T. Sellers and James H. Sewell as purchasers, is declared null and void and of no further force and effect.